IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:24-cv-00756-O |
| § | |
| STEPHANIE G. CUELLAR, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Motion for Default Judgment and Appendix in Support filed by Joe Hand Promotions, Inc. ("JHP") on January 2, 2025. ECF Nos. 15, 16. United States District Judge Reed O'Connor referred the Motion to the undersigned on January 6, 2025. ECF No. 18. Having considered the Motion and applicable legal authorities, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** the Motion (ECF No. 15) and **ENTER DEFAULT JUDGMENT** against Defendant Stephanie G. Cuellar, individually, d/b/a Mis Tragos Bar and Grill and d/b/a Mis Tragos Daiquiri Bar & Grill ("Defendant"), as explained below.

**I.    BACKGROUND**

JHP owns the licenses to display certain sporting events in commercial settings, including bars. ECF No. 1 at 2. In its business as a license-holder, JHP typically sells sublicensing rights to commercial establishments, allowing the establishments to display the programs to their patrons in exchange for a fee. *Id*. at 3. JHP held the exclusive commercial license to distribute and authorize the display of the August 29, 2021, boxing match between Jake Paul and Tyron Woodley ("the fight"). *Id*. at 2. JHP discovered that Defendant displayed the boxing program at Mis Tragos Bar

& Grill ("Establishment") without JHP's authorization through "interception and/or receipt of a signal transmitted over the air or, in the alternative, transmitted via cable." *Id*. at 6.

On August 8, 2024, JHP sued Defendant to recover statutory damages, attorney's fees, interest, and costs of litigation under the Communications Act of 1934 ("FCA"), 47 U.S.C. §§ 553, 605. JHP alleged that Defendant violated FCA sections 605 (unauthorized publication or use of communications) and 553 (unauthorized reception of cable service). ECF No. 1 at 7; 47 U.S.C. §§ 553, 605.

On September 17, 2024, JHP properly served Defendant by private process server Jonathan C. Sweatt securely affixing the requisite documents to the front entry way of a property previously authorized by Judge O'Connor. ECF Nos. 10, 9. Defendant did not appear or otherwise respond to JHP's complaint. JHP moved for, and the clerk entered, default against her. ECF No. 11, 13. Then, pursuant to Judge O'Connor's order (ECF No. 14), JHP moved for default judgment. ECF No. 15. It now asks this Court to award it statutory damages under 47 U.S.C. § 605, along with attorneys' fees, costs, and post-judgment interest. ECF No. 15 at 21; *see* ECF No. 15 at 1 n.1 (explaining that JHP moves for default judgment "solely under [section] 605").

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. There are three stages to entry of default judgment. First, a default occurs "when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); *see also* Fed. R. Civ. P. 55(a) (noting default occurs where the defendant "has failed to plead or otherwise defend" against the complaint). Second, the Clerk may enter a defendant's default if it is "established by affidavit or otherwise." *Brown*, 84 F.3d at 141 (citing Fed. R. Civ. P. 55(a)). Third, if the Clerk enters default,

the plaintiff must apply for a default judgment from the Court. Fed. R. Civ. P. 55(b)(2). The Court may not enter default judgment against an individual in military service until an attorney is appointed to represent the defendant. 50 U.S.C. § 3931.

"[A] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). Rather, courts retain ultimate discretion to grant or deny default judgments. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The Fifth Circuit has "adopted a policy in favor of resolving cases on their merits and against the use of default judgments," although this policy is "counterbalanced by considerations of social goals, justice and expediency, a weighing process . . . within the domain of the trial judge's discretion." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014) (quoting *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999)). Default judgment remains "a drastic remedy, not favored by the Federal Rules." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989); *see also U.S. for Use of M-Co Constr., Inc. v. Shipco General, Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (calling default judgments "draconian").

Courts use a three-pronged analysis to determine if default judgment is appropriate. *J & J Sports Prods., Inc. v. Morelia Mex. Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015). First, courts ask if default judgment is procedurally warranted. *See Lindsey*, 161 F.3d at 893. The *Lindsey* factors inform this inquiry. Under *Lindsey*, the Court may consider whether: (1) material issues of fact exist; (2) there has been substantial prejudice; (3) the grounds for default are clearly established; (4) the default was caused by a good faith mistake or excusable neglect; (5) default judgment would be too harsh; and (6) the court would be obliged to set aside the default upon motion from the defendant. *Id.*

Second, if default is procedurally warranted under *Lindsey*, courts analyze the substantive merits of the plaintiff's claims and ask if the pleadings establish a sufficient basis for default judgment. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The pleadings are sufficient if they satisfy Federal Rule of Civil Procedure 8. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015); *see* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Nishimatsu*, 515 F.2d at 1206. But the "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiff should receive. *Morelia*, 126 F. Supp. 3d at 813. In making this determination, the Complaint's "well-pleaded factual allegations are taken as true, except regarding damages." *U.S. for Use of M-Co Constr., Inc. v. Shipco General, Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987); *see generally Jackson v. FIE Corp.*, 302 F.3d 515, 525 & n.29 (5th Cir. 2002) ("If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (quoting 10A Charles Alan Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice & Procedure § 2688 at 58-59 & n.5 (3d ed. 1998)). At this juncture, courts often find it helpful to conduct a Rule 55(b)(2) hearing. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979); *see* Fed. R. Civ. P. 55(b)(2) (noting courts may conduct a hearing on motions for default judgment if needed to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter").

### III.     ANALYSIS

The Clerk entered default against Defendant (ECF No. 15), meaning that the Court must now ask if default judgment is appropriate. *Lewis*, 236 F.3d at 767. Having applied the three-pronged inquiry here, *see Morelia*, 126 F. Supp. 3d at 813, the undersigned concludes that default judgment is proper on JHP's claim.

#### A.     **Default judgment is procedurally appropriate under *Lindsey*.**

JHP's claim survives the first of the three-pronged inquiry. Under *Lindsey*, default judgment may be procedurally warranted based on six considerations. *See* 161 F.3d at 893. All six support default judgment here. Given Defendant's failure to answer the allegations, no material issues of fact exist. *See* ECF No. 1; *see also Lindsey*, 161 F.3d at 893. Thus, the Court may take as true JHP's pleadings demonstrating all material facts underlying the claim. *See* ECF No. 15. *Lindsey*'s first prong thus favors default judgment.

Similarly, nothing here shows the second factor's "substantial prejudice" requirement undermines JHP's entitlement to default judgment. *See Lindsey*, 161 F.3d at 893. JHP properly served Defendant with the Complaint, and she has had ample opportunity to respond in this matter. *See, e.g.*, ECF No. 10 (showing perfected service as of September 17, 2024). Moreover, Defendant's failure to answer the Complaint or otherwise appear threatens to bring this case to a halt, which would substantially prejudice JHP's interests. *Gandy v. Lynx Credit*, No. 3:14-cv-0369-B, 2014 WL 6805501, at *2 (N.D. Tex. 2014) (citing *Lindsey*, 161 F.3d at 893). *Lindsey*'s second prong thus favors default judgment.

The third and fourth elements also support default judgment because the grounds of the Defendant's default are clearly established, *see* ECF No. 13, and nothing indicates this default is due to "a good faith mistake or excusable neglect." *See Lindsey*, 161 F.3d at 893. Despite being

afforded multiple opportunities to do so, Defendant failed to respond to JHP's Complaint or file any other pleadings explaining this unresponsiveness. Accordingly, *Lindsey*'s fifth factor also supports default judgment. *See Lindsey* 161 F.3d at 893; *see also Joe Hand Promotions, Inc. v. Tacos Bar & Grill, LLC*, No. 3:16-cv-01889-M, 2017 WL 373478, at *2 (N.D. Tex. 2017) ("Entering default judgment against [Defendant], who has taken no action to respond to this action, is not 'harsh.'") (quoting *Lindsey*, 161 F.3d at 893); *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-cv-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. 2013) ("[Defendant] has had over five months to answer or otherwise respond to Plaintiff's Complaint, mitigating the harshness of a default judgment.").

Finally, given the clear satisfaction of the above elements, nothing indicates that the Court would "be obliged to set aside the default upon motion from the defendant." *See id.*; *see also Moreno v. LG Elecs.*, 800 F.3d 692, 698 (5th Cir. 2015) (noting district courts are not obliged to set aside a default upon defendant's motion where "the default was willful, the plaintiff will be prejudiced, or the defendant has no meritorious defense"). Accordingly, the *Lindsey* analysis reflects that default judgment is proper here.

    **B.**    **The pleadings establish a sufficient basis for default judgment.**

Having found default judgment appropriate under *Lindsey*, the undersigned looks next to the substantive merits of JHP's claim, asking whether the pleadings establish a sufficient basis for default judgement. *See Nishimatsu Constr. Co.*, 515F.2d at 1206. To do so, they need only satisfy Rule 8. *Wooten*, 788 F.3d at 498; *see* Fed. R. Civ. P. 8(a) (requiring a "short and plain statement" of the claim). Given such a straightforward rubric, JHP's Complaint and Motion clearly suffice. *See generally* ECF Nos. 1, 15.

The FCA prohibits "intercept[ing] any radio communication and divulg[ing] or publish[ing] the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person" without authorization from the sender. 47 U.S.C. § 605(a). Because the FCA is a strict-liability statute, JHP need only show that (1) the program was shown in Defendant's Establishment; (2) the program was shown without JHP's authorization; and (3) JHP is the exclusive licensee. *J&J Sports Prods., Inc. v. El 33, LLC*, No. EP-11-cv-519-KC, 2013 WL 164521, at *3 (W.D. Tex. Jan. 14, 2013).

JHP is entitled to default judgment because it has demonstrated each of these elements. First, JHP alleges that the fight was shown in the Establishment. ECF No. 15 at 11; *see* ECF No. 16-5 (affidavit of eyewitness John Sieminski who visited the Establishment while Defendant displayed the fight). Second, JHP alleges that it did not authorize Defendant to show the fight, stating that "Defendant did not have license, authorization, permission, or consent from [JHP] to exhibit the [fight]." ECF No. 1 at 5. Third, JHP alleges that it was the exclusive license-holder and attaches to its motion for default judgment evidence of its ownership of these licenses. ECF No. 1 at 3; *see* ECF No. 16-3 (copy of JHP's license). Because these allegations are enough to raise JHP's right to relief above the speculative level, the undersigned finds that default judgment is warranted here. *See Wooten*, 788 F.3d at 498.

Accordingly, JHP's claim is substantively meritorious. While default judgments are "a drastic remedy, not favored by the Federal Rules," *see Sun Bank of Ocala*, 874 F.2d at 276, JHP's entitlement here is beyond dispute. Thus, the Court must next "determine what form of relief, if any, the plaintiff should receive." *Morelia*, 126 F. Supp. 3d at 813.

### C. JHP should recover statutory damages, attorney's fees, the cost of litigation, and post-judgment interest.

It its Motion, JHP asks this Court to award it statutory damages under 47 U.S.C § 605, attorney's fees, costs, and post-judgment interest. ECF No. 15 at 21.

#### 1. Statutory Damages

Section 605 permits statutory damages for each violation of the type in this case "in a sum of not less than $1,000 or more than $10,000, as the court considers just." *See* 47 U.S.C. § 605(e)(3)(C)(i)(II). JHP seeks $10,000.00 for the FCA violation. ECF No. 15 at 21. JHP presents evidence that Defendant would have faced a sublicensing fee of $750.00 for a venue the size of the Establishment had she actually paid to lawfully broadcast the fight. ECF No. 15 at 4.

In assessing statutory damages under section 605, courts consider various factors, including the number of patrons in the establishment at the time of the violation and the licensing fee. *Joe Hand Promotions, Inc. v. 2 Tacos Bar & Grill, LLC*, No.3:16-cv-1889-M, 2017 WL 373478, at *3 (N.D. Tex. Jan. 26, 2017) (Lynn, C.J.). However, "to adequately deter piracy, the cost of piracy must be significantly higher than the cost of buying a license." *Id*. (quoting *J & J Sports Prods., Inc. v. Beck*, No. L-13-57, 2013 WL 5592333, at *2 (S.D. Tex. Oct. 9, 2013)).

JHP alleges that the Establishment's approximate capacity is 75 people. ECF No. 15 at 4; *see* ECF No. 16-5. It provides "rate cards" which it alleges demonstrate that JHP charge establishments of that capacity range $750.00 for the rights to show the fight. ECF No. 16-4. However, JHP admits through Mr. Sieminski's affidavit that only 8 people were at the Establishment during the "undercard event" preceding the fight. ECF No. 16-5. It is unclear how many people were there during the main event. This suggests that whatever unfair gain came from the unauthorized showing—including, for example, profits that Defendant made through enticing more people to come to the Establishment because it was showing the fight—is less than it would

have been had the bar been closer to full capacity. Because of this, the undersigned calculates JHP's statutory damages based on the number of patrons in the Establishment at the time of the alleged violation.

Approximately 8 people were at the Establishment during the "undercard event" preceding the fight. ECF No. 16-5. According to JHP's rate card for the fight, the cost to show the fight to that number of people would have been $550.00. *See* ECF No. 16-4. Next, Courts "normally treble[] the broadcasting fee to account for 'money saved by not complying with the law, as well as any profits made from food and drink sales associated with customers who stayed and watched the fight.'" *J&J Sports Prods., Inc. v. Rivera*, No. EP-14-cv-00343-KC, 2015 WL 1137473, at *4 (W.D. Tex. Mar. 12, 2015) (quoting *Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008)). Thus, when multiplied by three, the total statutory damages for the boxing match violation becomes $1,650.00. JHP should therefore receive $1,650.00 in total statutory damages per § 605(e)(3)(C)(i)(II).

JHP seeks additional damages under § 605(e)(3)(C)(ii) of the FCA in the amount of $50,000.00 (five times its requested statutory damages award of $10,000.00). ECF No. 15 at 19. Upon review, the Court finds that the allegations in JHP's Complaint demonstrate that Defendant's illegal conduct was willful and done for the purposes of their direct or indirect commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(ii); *see Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."). Accordingly, an award of additional damages under subsection (C)(ii) is warranted.

When faced with a defendant who broadcasts an event willfully and for her own commercial benefit, the amount of additional damages is typically determined by applying a multiplier between three and five to the amount of statutory damages awarded. *Joe Hand Promotions, Inc. v. Alima*, No. 3:13-cv-0889-B, 2014 WL 1632158, at *5 (N.D. Tex. Apr. 22, 2014). Application of a five times multiplier is warranted for more egregious conduct, such as charging patrons for the unauthorized broadcast or advertising it. *See, e.g., id.* (applying four times multiplier where the defendant charged a cover and showed the broadcast on nine screens); s*ee also, Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp. 2d 955, 961 (E.D. Wis. 2001) (applying five times multiplier where defendant advertised the broadcast, charged a cover, and showed the broadcast on five television monitors).

Under the circumstances alleged here, JHP's request for a five times multiplier is unreasonable. JHP alleges that Defendant did not charge a cover, did advertise the fight on social media, and showed the fight on only one television set. ECF No. 15 at 9-10; ECF No. 16-5. Further, JHP offers evidence of another such violation where Defendant advertised the showing of a fight at the Establishment in 2022. ECF No. 15 at 10; *see* ECF No. 16-8. Thus, the Court finds that while a five times multiplier is not warranted, a three times multiplier is appropriate because Defendant advertised the fight and is a "repeat offender." The Court determines that such damages are ascertainable from the Complaint and the record and recommends an award to JHP of $4,950.00 in additional damages. Accordingly, JHP is entitled to, and should be awarded total statutory damages in the amount of $6,600.00.

### 2. Attorney's Fees and Costs

FCA § 605(e)(3)(B)(iii) provides that courts "shall direct the recovery of full costs, including reasonable attorneys' fees, to an aggrieved party who prevails." 47 U.S.C. §

605(e)(3)(B)(iii). In addition to statutory damages, JHP asks for $2,075.00 in attorneys' fees ($250 per hour for 8.30 hours of work) and $535.00 in costs. *See* ECF No. 16-9 at 3; *see also* ECF No. 15 at 21. Based on the affidavit of JHP's counsel, which details the work counsel performed on this matter and attests to counsel's reasonable rate and costs incurred, the undersigned finds that the requested award is reasonable. ECF No. 16-9; *see Rivera*, 2015 WL 1137473, at *6 (awarding fees based on counsel's hourly rate); *G&G*, 2021 WL 12307444, at *4 (same). Therefore, the undersigned recommends awarding JHP $2,075.00 in attorneys' fees and $535.00 in costs.

### 3. Post-judgment Interest

JHP requests, and the undersigned recommends awarding, post-judgment interest. ECF No. 15 at 21. Federal law applies to the award of post-judgment interest. *See Travelers Ins. v. Liljeberg Enters., Inc.*, 7 F.3d 1203, 1209 (5th Cir. 1993) (citing *Chapman & Cole v. Itel Container Int'l B.V.*, 865 F.2d 676, 689 (5th Cir. 1989)). In particular, federal law provides that "[i]nterest shall be allowed on any monetary judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Therefore, JHP should receive post-judgment interest on the entire amount of the final judgment as calculated pursuant to § 1961.

## IV. CONCLUSION

Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** JHP's Motion for Default Judgment (ECF No. 15) and **ENTER DEFAULT JUDGMENT** in favor of JHP against Defendant. The Court also should award JHP $6,600.00 for statutory damages, $2,075.00 in attorneys' fees, $535.00 in costs, and post-judgment interest pursuant to 28 U.S.C. § 1961.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions,

and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

    **SIGNED** on January 15, 2025.

                                           Hal R. Ray, Jr.
                                           UNITED STATES MAGISTRATE JUDGE